UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| | ) | |
| G & S METAL CONSULTANTS, INC. *et al.*[1], | ) | CASE NO. 09-32979-11 |
| | ) | |
| Debtors and | ) | |
| Debtors-in-Possession. | ) | |

### FINANCING ORDER (I) APPROVING DEBTOR-IN-POSSESION FINANCING; (II) AUTHORIZING USE OF CASH COLLATERAL PURSUANT TO SECTIONS 361 AND 363 OF THE BANKRUPTCY CODE; AND (III) MODIFYING THE AUTOMATIC STAY

This matter came before the Court for a hearing on August 25, 2009 at 10:30 a.m., Eastern Time (the "Final Hearing"). G & S Metal Consultants, Inc. ("Metals") and G & S Transport, Inc. ("Transport", and together with Metals, collectively, the "Companies" or "Debtors") and the Debtors in the above-captioned Chapter 11 case (the "Bankruptcy Case"), each filed a voluntary petition to commence a case under Chapter 11 of Title 11 of the United States Code (collectively, the "Bankruptcy Code") on June 24, 2009 (the "Petition Date"). On June 30, 3009, this Court entered the Interim Financing Order (I) Approving Debtor-In-Possession Financing; (II) Authorizing Use of Cash Collateral Pursuant to Sections 361 and 363 of the Bankruptcy Code; (III) Modifying the Automatic Stay; and (IV) Giving Notice of the Scheduled Final Hearing [Docket Entry No. 53], which was amended on July 7, 2009 [Docket Entry No. 68] (as amended, the "First Interim Financing Order"). On July 31, 2009, this Court entered the Second Interim Financing Order (I) Approving Debtor-In-Possession Financing; (II) Authorizing Use of Cash Collateral Pursuant to Sections 361 and 363 of the Bankruptcy Code; (III) Modifying the Automatic Stay; and (IV) Giving Notice of the Scheduled Final

---

[1] The Debtors include: G & S Metal Consultants, Inc. and G & S Transport, Inc.

Hearing [Docket Entry No. 114] (the "Second Interim Financing Order"). On August 13, 2009, this Court entered the Third Interim Financing Order (I) Approving Debtor-In-Possession Financing; (II) Authorizing Use of Cash Collateral Pursuant to Sections 361 and 363 of the Bankruptcy Code; (III) Modifying the Automatic Stay; and (IV) Giving Notice of Final Hearing (the "Third Interim Financing Order"), pursuant to which this Court set August 25, 2009, as the hearing date for entry of a final order. The First Interim Financing Order, the Second Interim Financing Order and the Third Interim Financing Order shall be collectively referred to as the "Prior Interim DIP Orders." The Debtors have applied to this Court for a final order on the DIP Financing (defined below) (the "Motion"):

(I)     approval of Debtors post-petition entry into that certain DIP Financing arrangement with Fifth Third Bank ("Lender");

(II)     authorization pursuant to Section 364 of the Bankruptcy Code in the capacity of Debtors, to obtain debtor-in-possession financing from the Lender pursuant to the terms and conditions of: (a) the Motion; (b) the Budget, a copy of which is annexed as Exhibit A hereto, which may be amended, supplemented, extended or otherwise modified with the express written consent of the Lender; (c) the Prior Interim DIP Orders; and (d) this Final Financing Order (the "Final Financing Order", collectively, "DIP Financing"); and

(III)     authorization to grant super-priority administrative claim treatment to the Lender for any use of cash collateral, certain post-petition advances, and the pre-petition indebtedness subject to the liens, security interest and super priority treatment granted to the Lender.

Notice of the Motion, together with notice of the hearing on the Motion, having been given to the Debtors, the United States Trustee, Lender, the Committee of Unsecured Creditors, the creditors holding the twenty (20) largest unsecured claims against the Debtors' estates and all

intervenors and counsel of record, and the Court, having conducted a hearing on the Motion, having heard the presentation of the respective parties, having considered the Motion, and being otherwise duly advised in the premises; THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:

**<u>Jurisdiction and Venue</u>**

A.      On the Petition Date, the Debtors each filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code, commencing the Bankruptcy Case before the United States Bankruptcy Court for the Northern District of Indiana (the "<u>Court</u>").

B.      The Debtors are continuing in the management and possession of their business and properties as debtors-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

C.      This Court has jurisdiction over the subject matter and parties pursuant to 28 U.S.C. §§ 151, 157, and 1334.

D.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

E.      This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

F.      Notice of the relief sought by the Motion and the Final Hearing with respect thereto, which was held pursuant to Rule 4001 of the Federal Rules of Bankruptcy Procedure ("<u>Bankruptcy Rule</u>") and as required by Sections 364(c) and (d) of the Bankruptcy Code, was provided to the following parties: the Office of the United States Trustee (the "<u>U.S. Trustee</u>"); the Lender; the Internal Revenue Service, the Committee of Unsecured Creditors, and the creditors holding the twenty (20) largest unsecured claims against the Debtors' estates (the "<u>Final Notice Parties</u>") in accordance with Bankruptcy Rule 4001 and N.D. Ind. L.B.R. B-9013-2.

G.     Sufficient and adequate notice of this Final Financing Order has been provided based upon the notice sent to the Final Notice Parties, and the consent to the Motion as approved in this Final Financing Order by the Lender pursuant to Bankruptcy Rules 4001(b), (c) and (d), 9014 and Sections 102(1) and 364(c) of the Bankruptcy Code, and no further notice of, or hearing with respect to this Final Hearing and the relief requested in the Motion, is necessary or required.

H.     The Lender is willing to allow the Debtors to use its cash collateral and provide certain other credit accommodations to the Debtors, and the Debtors and the Lender are willing to consent to the treatment of the Lender and the use of cash collateral only upon the conditions contained in this Final Financing Order.

I.     The Debtors are unable to obtain sufficient levels of unsecured credit and related necessary financial facilities to maintain and conduct their businesses, which unsecured debt facilities would be allowable only under Sections 364(b) and 503(b)(1) of the Bankruptcy Code as an administrative expenses.

J.     The Debtors are unable to obtain secured credit allowable only under Sections 364(c)(2)-(3) and (d) of the Bankruptcy Code, except under the terms and conditions provided in this Final Financing Order.

K.     The credit and financial accommodations to be extended under the DIP Financing are being extended by the Lender in good faith and (i) the provisions for extension of adequate protection and use of cash collateral are made in good faith, and (ii) the Lender is entitled to protections of Sections 364(c) and 363(m) of the Bankruptcy Code.

L.     It is in the best interest of the Debtors' estates that they be allowed to finance their operations under the terms and conditions set forth herein.

M.    The Debtors admit that as of the Petition Date they are liable pre-petition under the lending facilities (the "Existing Credit Facilities") as described and amended in that Certain Amended and Restated Credit Agreement among Metals; Transport; G&S Holdings, LLC ("Holdings"); Aluminum Sizing, Inc. ("ASI"); and Lender, as modified and amended by the Forbearance Agreement dated as of June 26, 2008; the Second Forbearance Agreement dated as of July 21, 2008; and the Third Forbearance Agreement dated as of November 3, 2008[2] (collectively, the "Credit Agreement") in the following amounts: (1) that certain Revolving Line of Credit to Metals and ASI in the principal amount not to exceed $5,100,000.00[3]; (2) that certain Consolidated Term Note to Metals with an aggregate principal amount not to exceed $3,631,000.00; (3) that certain Capital Expenditure Draw Note to Metals not to exceed the maximum principal amount of $1,500,000.00; (4) that certain Stand-by Letter of Credit Facility to Metals, Holdings and/or ASI up to a maximum aggregate principal amount not to exceed $5,309,664.00; and (5) that certain Revolving Line of Credit to Transport in the maximum principal amount not to exceed $100,000.00; and that as to such obligations: (i) the Debtors were indebted without claim, defense, counterclaim, recoupment, or offset of any kind, and that the amounts of the aggregate principal plus interest costs, expenses and other charges thereon, including, without limitation, all attorneys' fees and legal expenses and other charges of the Lender, are accurately stated; and (ii) the obligations were fully secured by valid, binding, enforceable and properly perfected first-priority liens and security interest in all of the collateral

---

[2] All referenced to the Credit Agreement refer to it as amended by the Forbearance Agreement dated as of June 26, 2008; the Second Forbearance Agreement dated as of July 21, 2008; and the Third Forbearance Agreement dated as of November 3, 2008.

[3] Pursuant to the Third Forbearance Agreement dated as of November 3, 2008, the maximum aggregate principal on the Revolving Line of Credit was reduced to $8,000,000.00. This Order reduces the maximum aggregated principal on the Revolving Line of Credit to $5,100,000.00 which is the current aggregate principal amount due and owing by Metals.

as defined in the Credit Agreement, existing as of the time immediately prior to the filing of the petition for relief herein and the post-petition proceeds and products thereof.

      N.    The Debtors admit that no portion of the Existing Credit Facilities is subject to avoidance, recharacterization, recovery, disallowance or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law, and the Debtors do not have, and hereby forever release any claims, counterclaims, causes of action, defenses or setoff rights, whether arising under the Bankruptcy Code or applicable non-bankruptcy law on or prior to the date hereof, against the Lender and its respective affiliates, subsidiaries, agents, officers, directors, employees, attorneys and advisors.

      O.    The Debtors represent that without the financing proposed by the Motion, the Debtors will not have the funds necessary to pay the expenses necessary for the continued operation of the Debtors' businesses and the management and preservation of the Debtors' assets and property. The Debtors have requested that pursuant to the Credit Agreement and this Final Financing Order, the Lender will permit the Debtors to use Lender's cash collateral, and provide other financial accommodations to the Debtors to be used by the Debtors solely for the purposes set forth in the Budget. The ability of the Debtors to continue their businesses and reorganize under Chapter 11 of the Bankruptcy Code depends upon the Debtors' obtaining such financing from the Lender. The Lender is willing to allow the Debtors to use its cash collateral and provide such other financial accommodations on a senior secured basis as more particularly described herein in accordance with this Final Financing Order. Accordingly, the relief requested in the Motion is necessary, essential and appropriate for the continued operation of the Debtors' businesses, the management and preservation of its assets and properties, and it is in the best interests of the Debtors, their estates and their creditors. The Debtors represent and the

Court expressly finds that the terms of the Credit Agreement between the Debtors and the Lender, pursuant to which the use of Lender's cash collateral and other credit and financial accommodations will be made or provided to Debtors by the Lender as modified by this Final Financing Order have been negotiated at arms length and in good faith, as that term is used in Section 364(e) of the Bankruptcy Code, and are in the best interests of the Debtors, their estates and creditors. The Debtors further represent and the Court expressly finds that the Lender is extending financing to the Debtors in good faith and the Lender is entitled to the benefits of the provisions of Section 364(e) of the Bankruptcy Code. The Debtors represent that the relief requested by the Motion is necessary to avoid immediate and irreparable harm to the Debtors' estates. Good, adequate and sufficient cause has been shown to justify the granting of the relief requested herein and the immediate entry of this Final Financing Order. On August 7, 2009, the Official Committee of Unsecured Creditors (the "Committee") filed its Limited Objection to Debtors' First Day Motion for Order Authorizing Debtor-in-Possession Financing and Use of Cash Collateral; Requesting Preliminary and Final Hearing (the "Limited Objection") and on August 24, 2009, the Committee filed its Supplement to the Committee's Limited Objection (the "Supplemental Objection" and with the Limited Objection, the "Objection"). No other party appearing in the Debtors' Bankruptcy Case has filed or made an objection to the relief sought in the Motion and the entry of this Final Financing Order. There Court hereby OVERRULES the Committee's Objection;

AND THE COURT HEREBY FURTHER FINDS AND DETERMINES THAT:

P.    The Lender, with respect to its consent to allow the Debtors to use its cash collateral and with respect to any other financial accommodations, in its capacity as pre-petition

lender as to the Existing Credit Facilities, does not control or otherwise direct the operations of the Debtors.

 Q. Good and sufficient cause exists for the issuance of this Final Financing Order to prevent irreparable harm to the Debtors' estates.

NOW, THEREFORE, IT IS HEREBY ORDERED:

 1. **MOTION GRANTED.** The Motion is granted, and the Debtors are hereby authorized: (a) to borrow from Lender, subject to the terms of this Final Financing Order, and to execute all documents and take all actions to be executed and taken in connection with and in furtherance of all undertakings and obligations thereunder; (b) to use the Lender's Cash Collateral, as defined herein, in accordance with the Budget; (c) from the availability under the Debtors' checking and deposit accounts maintained by Lender, service post-petition obligations set forth in the Budget and all contractual obligations on the pre-petition DIP Obligations; and (d) to otherwise incur debt to the Lender in accordance with and pursuant to the terms and conditions of this Final Financing Order, consistent in amount and type of expenditure with the Budget, and this Final Financing Order shall become effective immediately upon its entry. The use of Lender's Cash Collateral, extensions of credit and financial accommodations under the DIP Financing are hereby approved. The Lender shall have its rights and the obligations set forth in the Credit Agreement to make loans, make and continue advances and/or financial accommodations, service the Existing Credit Facilities, acquire new and replacement liens and cross-collateralizations, all pursuant to the terms and conditions thereof and hereof.

 The Budget shall be deemed to include payment of pre-petition payroll checks outstanding on the Petition Date and other amounts approved by order of the Bankruptcy Court in order to avoid immediate and irreparable harm. For administrative convenience, Lender may

record pre-petition and the post-petition transactions into one account and apply payments on a first-in, first-out basis. The Credit Agreement and the terms and provisions thereof, shall remain in full force and effect.

2. **SUPER-PRIORITY CLAIMS.** For any and all obligations (the "DIP Obligations") incurred by Debtors to Lender in accordance with the Motion, the Prior Interim DIP Orders, this Final Financing Order, the DIP Financing, the Credit Agreement and the other Credit Documents relating thereto, including without limitation, all loans, extensions of credit, advances and all other indebtedness and obligations incurred by Debtors to Lender of every nature and however arising, absolute or contingent, direct or indirect, including without limitation, all regular and default interest, fees, charges, costs and expenses, servicing and other fees in the Credit Agreement now existing under the Existing Credit Facilities or arising after entry of this Final Financing Order and the rights granted below, the Lender is granted and allowed super-priority administrative claim status in accordance with Section 364(c)(1) of the Bankruptcy Code having a priority in right of payment over any and all other obligations, liabilities and indebtedness of the Debtors, now in existence or hereafter incurred by the Debtors and over any and all administrative expenses, adequate protection claims or other priority claims of any kind including as specified in, or ordered pursuant to, Sections 326, 330, 331, 503(b), 506(c), 507(a) or 507(b) of the Bankruptcy Code, whether arising in the Debtors' Bankruptcy Case or in a superseding Chapter 7 case, subject to the payment of quarterly fees required to be paid to the United States Trustee pursuant to 28 U.S.C. § 1930(a)(6). Super-priority administrative claim status granted to the Lender shall be senior to any super-priority claim granted as adequate protection to any other party. As a matter of administrative efficiency, and to avoid cash flow interruptions, all post-petition advances by Lender to fund payroll and other

necessary expenses, made after the Petition Date but whether made before or after the entry of any emergency, interim or final order approving the DIP Financing or use of Cash Collateral, and whether deemed advanced under the Credit Agreement shall be granted super-priority administrative claim status.

3.       **"DIP LIENS".** Pursuant to Sections 362, 363(e) and 364(c) and (d) of the Bankruptcy Code, as security for the prompt payment and performance of any and all DIP Obligations, the Debtors are hereby authorized to grant to the Lender, valid, binding, enforceable and perfected liens and security interests ("DIP Liens") in all the Debtors' presently owned or hereafter acquired property and assets (including claims and causes of action brought under Chapter 5 of the Bankruptcy Code and proceeds thereof, but without prejudice to the Committee's right to challenge the ability, extent and/or authority of either the Debtors or the Lender to pursue any such causes of action under Chapter 5 of the Bankruptcy Code, which right is expressly preserved), whether such property and assets were acquired by Debtors before or after the Petition Date, of any kind or nature, whether real or personal, tangible or intangible, wherever located (collectively the "DIP Collateral"), including, without limitation: all deposit accounts, accounts, receivables, chattel paper (including electronic chattel paper), instruments, documents (including electronic documents of title), all of Debtors' rights and claims relating to deposits and reserves held by the utilities and trade creditors, inventory, farm products, rights, equipment, rolling stock (including titled and non-titled vehicles), general intangibles (including, without limitation, payment intangibles, intellectual property, equity and ownership interests in partnerships, corporations, limited liability companies and joint ventures (unless prohibited by law, in which case the lien shall be on the proceeds of such interests), tax refunds, letter of credit rights, supporting obligations, commercial tort claims, and investment property (other than any

equity interest held by Debtors' principals, but including proceeds of any sale or other disposition of such equity interest), all insurance proceeds on the life of Robert Scott Galley II, all insurance proceeds assigned to Lender, including but not limited to all proceeds from any business interruption claim[4] and net proceeds or account receivable created from the conversion of customer placed scrap under any tolling/consignment agreement for inventory.  In all such DIP Collateral that is not subject to any existing good and valid pre-petition lien, such DIP Liens granted hereunder shall be first priority, senior liens pursuant to Bankruptcy Code § 364(c)(2). With respect to all such DIP Collateral that is subject to any existing good and valid pre-petition lien not subordinated to Lender's liens (the "Permitted Liens"), such DIP Liens granted by the Prior Interim DIP Orders and/or hereunder shall be junior only to each such liens pursuant to Bankruptcy Code § 364(c)(3). The post-petition collateral shall not be: (i) subject to any lien that is avoided and preserved for the benefit of the Debtors' estates under Section 551 of the Bankruptcy Code, or (ii) subordinated to or made pari passu with any other lien under Section 364(d) of the Bankruptcy Code or otherwise.  No claim or lien having a priority superior to or pari passu with the DIP Liens granted by the Prior Interim DIP Orders and/or this Final Financing Order with respect to the DIP Obligations shall be granted or allowed, other than the Permitted Liens, until the indefeasible payment in full, in cash and satisfaction, of the DIP Obligations and the obligations under the Existing Credit Facilities. Without limiting the generality of this Paragraph 3, the DIP Collateral, and any other collateral, including but not limited to all collateral under the Credit Agreement and all other Credit Documents, shall serve as security for the DIP Obligations and the obligations under the Existing Credit Facilities, and also any pre-order, post-petition advances made to Debtors by Lender described in the last

---

[4] Currently pending before this Court at Adv. Proc. No. 09-03089 (the "Business Interruption Claim").

sentence of paragraph 2 above, and shall fully cross-collateralize the pre-petition obligations and DIP Obligations owing to Lender.

       4.    **USE OF PROCEEDS.** The use of Cash Collateral and other financial accommodations and advances under the DIP Financing made by Lender to Debtors in accordance with this Final Financing Order will be used for payment of operating costs and expenses post-petition only as provided for in the Budget attached hereto as Exhibit A.

       5.    **CARVE-OUT.** Notwithstanding any contrary provision of this Final Financing Order or DIP Financing, the liens and superiority claims granted to Lender shall be subject and subordinate to, following the occurrence and during the pendency of a Carve-Out Event (as hereinafter defined), the payment of costs of winding up the Chapter 11 Cases and the payment of allowed professional fees and disbursements by the professionals retained prior to the Termination Date pursuant to Bankruptcy Code §§ 327 or 1103(a) by the Debtors and any statutory committees appointed in these Chapter 11 Cases ("Professional Fees and Expenses") in an aggregate amount not to exceed $100,000.00, plus professional fees and expenses incurred prior to a Carve-Out Event but not yet paid to the extent such fees and expenses are approved by the Bankruptcy Court, plus quarterly fees required to be paid pursuant to 28 U.S.C. § 1930(a)(6) and any fees payable to the Clerk of the Bankruptcy Court and any agent thereof (collectively, the "Carve-Out") subject to the rights of Fifth Third Bank to object (as to eligibility and amount) to the award of any fees and expenses. Notwithstanding anything herein to the contrary, no part of the Carve-Out or Cash Collateral may be used to directly or indirectly by the Debtors, any committee or any other person or entity, to object to or contest the Existing Credit Facilities, the DIP Obligations or the DIP Financing, or to challenge (as opposed to investigate) the pre-petition obligations and pre-petition collateral.

For the purposes of the proceeding paragraph, the term "Carve-Out Event" shall mean the termination of Debtors' authorization to use Cash Collateral and of the DIP Financing in accordance with the terms hereof.

6.    **USE OF CASH COLLATERAL AND DIP FINANCING.** Substantially all of the Debtors' cash, including, without limitation, all cash generated from the sale of customer placed scrap and all cash and other amounts on deposit or maintained by Debtors in any account or accounts, constitute proceeds of collateral and, therefore, are cash collateral of Lender within the meaning of Section 363(a) of the Bankruptcy Code (the "Cash Collateral").

a.    For the period commencing on the date of the entry of this Final Financing Order and up to and including September 30, 2009 the expenditures and cash disbursements by Debtors, are limited to the maximum aggregate amount of $590,427.00;

b.    Commencing on the Petition Date, the maximum aggregate amount to be disbursed for the professional fees of the Committee, pursuant to this Final Financing Order shall not exceed $50,000.00.

c.    Use of Cash Collateral is subject to the following conditions:

i.    From August 28, 2009 forward, Metals must maintain a borrowing base[5], (the "Metals Borrowing Base") at an amount equal or greater than the sum of: $648,000.00.   Metals shall provide certification in writing of the amount of the Metals Borrowing Base as of a specified date, in a form acceptable to Lender and executed on behalf of Metals by an authorized signor (a "Metals Borrowing Base Certificate") on a daily basis;

---

[5] The Metals Borrowing Base shall be calculated pursuant to the formula set forth in the Credit Agreement.

ii.    Debtors must provide, in writing, a daily ledger detailing: (1) the daily use of Cash Collateral; and (2) the total aggregate use of Cash Collateral, in a form acceptable to Lender and executed on behalf of Debtors by an authorized signor (a "<u>Cash Use Ledger</u>") on a daily basis;

iii.   no later than the first day of each month, Metals must pay all Rent on the as set forth in the Budget to Holdings to be immediately deposited by Holdings by submission of such Rent to Holdings' deposit account maintained with the Lender;

iv.   on the Monday following the entry of this Final Financing Order and for every Monday thereafter, Metals must pay all Interest as set forth in the Budget to the Lender;

v.    during any approved Budget Period, the fair market value of Debtors' inventory shall not go below $420,000.00;

vi.   From August 28, 2009 forward, Debtors' accounts receivables shall not be less than $611,000.00; and

vii.  all conditions precedent shall be satisfied at the time of such use as if the use of Cash Collateral were an application of loan proceeds or advances under the Credit Agreement to the extent the terms of this Final Financing Order and the Credit Agreement are in conflict, the terms of this Final Financing Order shall govern (and any such use of Cash Collateral shall be deemed a representation and warranty by the Debtors that such conditions have been satisfied as of the date of use of Cash Collateral as if the

amount thereof were a request for an application of loan proceeds under the Credit Agreement);

d.    Subject to all of the terms and conditions herein, Cash Collateral collected after the Petition Date, but prior to the Termination Date (as hereinafter defined), may be used by the Debtors to pay its post-petition obligations consistent with the Budget;

e.    Unless otherwise provided for immediately above, Cash Collateral collected on or after the Petition Date but prior to the Termination Date not required for the payment of expenses consistent, in amount and type of expenditure, with the Budget, shall be held in a cash collateral account maintained by Lender until release to the Debtors to pay its post-petition obligations consistent with the Budget or, if required by the Lender under the Credit Agreement, be applied to loans and unpaid advances under the Credit Agreement. Cash generated through availability under the Credit Agreement shall be processed, deposited, swept, released, surcharged, discounted, drawn, and otherwise handled as required in the Credit Agreement;

f.    Cash Collateral collected on or after the Termination Date shall be applied first to payment of costs, fees and expenses of the Lender until payment in full thereof, and then to any remaining obligations under the Credit Agreement according to the priorities of their respective liens therein and then to the Debtors; and

g.    The Lender's consent to the use of Cash Collateral by Debtors (whether in the form of Cash Collateral or credit) shall be subject to termination if a Termination Event exists.

7. **PAYMENT OF PROFESSIONAL FEES.** Prior to the Termination Date, the Debtors shall be permitted to pay compensation and reimbursement of expenses authorized to be paid under Bankruptcy Code §§ 328, 330, and 331, or otherwise pursuant to an Order of this Court, as the same may be due and payable (subject to the reservation of rights of the Lender to object to approval of any such professional fees) and such payment shall not reduce the Carve-Out subject to the right of the Lender to object to such payments. Upon the Termination Date and notice by the Lender to the Debtors, any committee appointed by the U.S. Trustee and the U.S. Trustee, the right of the Debtors to pay professional fees outside the Carve-Out shall terminate and upon such occurrence, the Debtors, after receipt of the Carve-Out Event Notice from the Lender, shall provide immediate notice by facsimile or e-mail to all professionals in the cases informing them that a Carve-Out Event has occurred and further advising them that the Debtors' ability to pay professionals is subject to the Carve-Out.

8. **SECTION 506(c) LIMITATION.** The Lender asserts that under the facts and circumstances of this case that there is no basis for recovery under Section 506(c) of the Bankruptcy Code, and the Lender does not consent to any recovery thereunder. For purposes of the Prior Interim DIP Orders and this Final Financing Order, the Debtors have granted the Lender a first-priority lien in the proceeds of such recovery, and the Debtors hereby expressly waive any Section 506(c) claims against the Lender. In light of its agreement to subordinate its liens and super-priority claims to the Carve-Out, the Lender shall be entitled to all benefits of Section 552(b) of the Bankruptcy Code and the "equities of the case" exception under Section 552(b)(1) of the Bankruptcy Code shall not apply to such parties with respect to the proceeds, product, or profits of any of its collateral.

9.     **RELEASES OF CLAIMS AND DEFENSES.** Debtors waive, release and affirmatively agree not to allege or otherwise pursue any or all defenses, affirmative defenses, counterclaims, claims, causes of action, recoupments, setoffs or other rights that they may have (i) to contest any defaults or events of defaults which could have been or were declared by the Lender under the Existing Credit Facilities as of the Petition Date; (ii) to contest any provisions of the Credit Documents constituting the Existing Credit Facilities; (iii) to contest the amount, priority or allowance of the Debtors' indebtedness to the Lender under the Existing Credit Facilities as of the Petition Date which amounts are expressly set forth above in this Final Financing Order; (iv) to contest the conduct of the Lender under the Existing Credit Facilities in administering those facilities; or (v) to take any actions against the Lender under the Existing Credit Facilities with respect to lender liability theories and pursuant to Sections 510, 544, 547, 548 and 549 of the Bankruptcy Code.  For purposes of this Final Financing Order, Debtors affirmatively state that they know of no reason to and agree not to contest or to challenge that the liens and security interests granted to the Lender under the Credit Agreement, the related Credit Documents, the Existing Credit Facilities, and under this Final Financing Order whether pre-petition or post-petition, or that such liens and security interests are senior, valid, fully perfected, non-voidable liens and security interests securing Existing Credit Facilities, the DIP Obligations and post-petition obligations except as to the Permitted Liens (the "Lien Finding").

10.     **LENDER PROTECTION.** The credit and financial accommodations to be extended under the DIP Financing are being extended by the Lender in good faith and (i) the provisions for extension of adequate protection and use of cash collateral are made in good faith, and (ii) the Lender as defined herein is entitled to protection of Sections 364(e) and 363(m) of the Bankruptcy Code.  By taking actions pursuant to this Final Financing Order, Lender shall

not: (i) be deemed to be in control of the operations of the estate, or (ii) be deemed to be acting as a "responsible person" with respect to the operation or management of the estate.

11.    **FEES AND EXPENSES.** In addition to any rights granted to the Lender under the Credit Agreement, under the Prior Interim DIP Orders, and/or under this Final Financing Order, the Lender shall be entitled to charge the Debtors' accounts wherever located or receive reimbursement thereof, without application to the Court, for:

a.    all of the Lender's reasonable fees and expenses, reasonable attorneys' fees and legal expenses, and other advisor or professional fees and expenses incurred in connection with the DIP Financing or any actions taken in connection with this Bankruptcy Case, including without limitation the negotiating, closing, documenting and obtaining of Court approval thereof. Debtors shall pay in addition, all of Lender's costs, expenses and attorneys' fees incurred in all proceedings in connection with the interpretation, amendment, modification, enforcement or carrying out of the DIP Financing, the Prior Interim DIP Orders or this Final Financing Order at any time, and all expenses, costs and charges in any way or respect arising in connection therewith or related thereto; and

b.    all of the Lender's facility, administrative and filing fees, recording taxes and fees, title insurance premiums and fees, reasonable internal examination and audit expenses; and

c.    such fees and expenses in the foregoing subparagraphs (a) and (b) (collectively, the "Reimbursable Fees") shall be funded through loans or advances under the DIP Financing or the Credit Agreement, charged to the Debtors' account and shall constitute a part of the Debtors' DIP Obligations; provided, however, that upon

the Debtors' request, the Lender shall submit copies of its professional fee invoices to the Debtors. Lender may pay such costs by offset against the availability generated under the Credit Agreement post-petition.

12.     **COLLATERAL INSURANCE AND PAYMENT OF TAXES.** The Debtors, at their own expense, shall continue to, at all times, keep the DIP Collateral insured against all loss, peril and hazard as provided for in the DIP Financing and immediately provide Lender with copies of the current certificates and policies of insurance, and promptly after renewal of coverage or after the effective date of coverage (in the event there is a change in insurance carriers), provide Lender with appropriate certificates and policies of insurance.

The Debtors, at their own expense, shall continue to, at all times pay any and all post-petition taxes, assessments and governmental charges with respect to such collateral and will provide the Lender with proof thereof upon written demand and will give the Lender access to its records in this regard.

13.     **AUTOMATIC LIEN PERFECTION AND MODIFICATION OF AUTOMATIC STAY.** All liens granted herein and in the Credit Agreement to or for the benefit of the Lender shall, pursuant to the Prior Interim DIP Orders or this Final Financing Order be, and thereby are, valid, enforceable and perfected, effective as of the date of the entry of the First Interim Financing Order, and (notwithstanding any provisions of any agreement, instrument, document, the Uniform Commercial Code or any other relevant law or regulation of any jurisdiction) no further notice, filing or other act shall be required to effect such perfection, and all liens on any other deposit accounts shall, pursuant to the First Interim Financing Order be, and they hereby are, deemed to confer "control" for purposes of Sections 8-106, 9-104 and 9-106 of the Uniform Commercial Code as in effect as of the date hereof in favor of the Lender

consistent with its interests. The automatic stay provisions of Section 362  of the Bankruptcy Code are hereby modified to permit (a) the Debtors to implement the terms of the DIP Financing and the Credit Agreement, (b) the Debtors to create, and the Lender to perfect, any and all liens and security interests granted to them hereunder; provided, however, that Lender shall not be required to file UCC financing statements or other instruments with any other filing authority to perfect any lien or security interest granted by the Prior Interim DIP Orders or this Final Financing Order or take any other action to perfect such liens and security interests, including all liens and security interests declared in the Existing Credit Facilities, and each of them, and the Credit Documents supporting the Existing Credit Facilities, such perfection of liens and security interests are hereby deemed automatically perfected; if, however, the Lender shall, in its sole discretion, elect, for any reason, to file, record or serve any such financing statements, this Final Financing Order, or other documents with respect to such liens and security interests, the Debtors shall execute the same upon request and the filing, recording or service thereof (as the case may be) shall be deemed to have been made the date of and with the priority of such liens and security interests as provided for in this Final Financing Order.

In addition to the other rights and remedies provided to the Lender pursuant to the Prior Interim DIP Orders, this Final Financing Order and the Credit Agreement, upon the occurrence of a Termination Event or an event of default, and the filing in this Court of an affidavit by a duly authorized representative of the Lender specifying the nature of such event of default and/or Termination Event, and request by the Lender for relief under the terms hereof, the Lender shall be entitled to an expedited hearing before this Court seeking the following relief (among other possible relief): the termination of the automatic stay under Section 362(a) of the Bankruptcy Code with respect to the Lender as to the DIP Collateral, including but not limited to, the Cash

Collateral, and the Lender shall have the immediate right to the possession of the DIP Collateral and may pursue all rights and remedies available to it as a secured creditor with respect to the DIP Collateral, including but not limited to the Cash Collateral under the Prior Interim DIP Orders, this Final Financing Order and the Credit Agreement (without regard to notice or grace periods) and may otherwise pursue all rights and remedies available to it under non-bankruptcy law.

14.    **MODIFICATION OF PAYMENT DEADLINES.** The time of payment of any and all obligations of the Debtor arising out of, treated in, or incurred pursuant to the Prior Interim DIP Orders, this Final Financing Order or the Credit Agreement shall not be altered, extended or impaired by any plan or plans or reorganization that may hereafter be accepted or confirmed or any further orders of the Court which may hereafter be entered.

15.    **TERMINATION EVENTS.** Any and all Obligations of the Debtors arising out of, or incurred pursuant to, the Credit Agreement and the DIP Financing shall be immediately due and payable, the Lender shall have no obligation to make loans and/or advances to the Debtors, or allow the Debtors to use Cash Collateral and the DIP Financing shall terminate, upon the "Termination Date" which is the earlier to occur of (1) September 30, 2009, (the "Maturity Date"), or (2) any of the following events upon notice to the Debtors being given by the Lender ("Terminating Events" or "Termination Event"):

a.    The Bankruptcy Case of the Debtor shall be dismissed or converted to a Chapter 7 case;

b.    A Chapter 11 Trustee shall be appointed in the Bankruptcy Case;

c.    Other than Permitted Liens and the Carve-Out, any other super-priority claim or lien equal or superior in priority to that granted pursuant to or permitted under the

Prior Interim DIP Orders, this Final Financing Order, any other Interim Financing Order entered in connection herewith and the Final Order (the First Interim Financing Order, the Second Interim Financing Order, the Third Interim Financing Order, and this Final Financing Order, collectively, the "<u>Financing Orders</u>") shall be granted;

d.      A Financing Order shall be amended, reversed, stayed, vacated or otherwise modified, in the case of an amendment or modification, in a way that materially and adversely affects the rights of the Lender and that is not acceptable to the Lender, in its sole discretion, as set forth in the Credit Agreements;

e.      The automatic stay of section 362 of the Bankruptcy Code shall be lifted as to allow a third party to proceed against any asset of any of the Debtors;

f.      An examiner or other person having enlarged powers under Section 1106(b) of the Bankruptcy Code shall be appointed;

g.      A material adverse change shall occur in the condition or prospects, financial or otherwise, of any of the Debtors after the Petition Date;

h.      The failure of any one of the Debtors to comply with the Financing Orders;

i.      The failure to obtain a Lien Finding acceptable to the Lender within 60 days (or such later date as may be agreed to by the Lender) after the appointment of a Committee;

j.      The Final Order shall not be entered within 62 days after the Petition Date or such later date as to which the Lender may agree;

k.      The occurrence of any other default or event of default as provided in the Credit Agreement;

l.      If the Debtors seek an order in the Bankruptcy Case or support any applications therefore that authorize, without (a) all obligations outstanding to the Lender fully being indefeasibly satisfied in full in cash or (b) the Lender providing its prior written consent:  (i) under Section 363 of the Bankruptcy Code, the use of Cash Collateral in which the Lender has an interest, or the sale, use, or lease, other than in the ordinary course of business, of other property of the Debtor in which the Lender has an interest; (ii) the obtaining of credit or the incurring of indebtedness pursuant to Sections 364(c) or (d) of the Bankruptcy Code, or any other grant of rights against the Debtors and/or their estates, secured by a lien or security interest in the collateral held by the Lender or entitled to priority administrative status which is junior, equal or superior to that granted to the Lender herein; (iii) to the extent permitted by law, with respect to reclamation claims only, the return of goods by the Debtor pursuant to Section 546(c) of the Bankruptcy Code; or (iv) an order dismissing the Bankruptcy Case.

16.     **RIGHTS UPON OCCURRENCE OF TERMINATING EVENT.** Upon the occurrence of a Terminating Event or upon the occurrence of the Maturity Date:

a.      The Debtors shall immediately segregate all of the DIP Collateral, including without limitation Cash Collateral, and shall not be permitted to use such collateral absent the Lender's prior written consent; and (2) the Lender may:

i.      declare the principal of and accrued interest on the outstanding DIP Obligations and the Existing Credit Facilities to be immediately due and payable; and

ii.     terminate the DIP Financing and thereby terminate any further commitments to extend any further financing under the Credit Agreement to the Debtors.

b.     After the Terminating Event, the Lender shall have the right, free of the restrictions of Section 362 of the Bankruptcy Code: (1) to take immediate reasonable action to protect and preserve the DIP Collateral; and (2) after giving three (3) business days prior written notice of a Terminating Event (the "Termination Notice") to the Debtor, counsel for any Committee and the U.S. Trustee (the "Notice Parties"), to take any or all of the following actions without further order or an application to the Court:

i.     Set off amounts in accounts (including any existing accounts maintained by the Debtors with the Lender) or otherwise take steps to foreclose upon the DIP Collateral for the DIP Obligations and the Existing Credit Facilities;

ii.     Require that any Cash Collateral be applied against the DIP Obligations and, if any excess, against the obligations under the Existing Credit Facilities; and

iii.     Proceed with the remedies set forth in the Credit Agreement, including without limitation, foreclosure of the DIP Collateral with proceeds applied to the obligations owing to Lender and take any other actions permitted by the applicable documents, at law or otherwise.

c.     In any hearing regarding any exercise of rights or remedies, the only issue that may be raised by any party in opposition thereto shall be whether, in fact, a

Terminating Event has occurred and is continuing, and the Debtors hereby waive their right to seek relief, including, without limitation, under Section 105 of the Bankruptcy Code, to the extent such relief would in any way impair or restrict the rights and remedies of the Lender set forth in the Prior Interim DIP Orders, this Final Financing Order, the Credit Agreement or the related Credit Documents or under the Existing Credit Facilities. In no event shall the Lender be subject to the equitable doctrine of "marshalling" or any similar doctrine with respect to the DIP Collateral.

17.    **RIGHT TO SEEK FURTHER RELIEF.** Nothing in this Final Financing Order shall limit the rights of the Lender to seek further relief (including additional adequate protection) or modification or termination of the automatic stay for good cause shown.

18.    **ASSIGNMENT OF RIGHTS.** Nothing in this Final Financing Order shall limit the rights of the Lender to assign all of its rights, claims and obligations under the Credit Agreement or the Credit Documents, or to obtain or sell participation interests in the same.

19.    **REPORTS.** The Debtors shall provide the Lender with such written reports, certified by an authorized officer of the Debtor to be accurate to the best of his or her knowledge, information and belief, and such additional written reports as the Lender in its reasonable discretion, shall require, in each case as provided under the terms of the Credit Agreement.

Beginning on the first Tuesday after the entry of this Final Financing Order, and every Tuesday thereafter, by 8:00 a.m. Eastern Time, while the Debtors are authorized to use Cash Collateral, the Debtors shall provide Lender with  the following financial reports pertaining to the previous week's activity (for the previous Saturday through Sunday):

a.    a weekly comparison of actual cash with the Budget;

b.      a weekly aging of the accounts payable and receivable; and

c.      a rolling thirteen (13) week cash flow projection statement which will include all sources and uses of funds including income tax refunds, insurance settlements, proceeds and capital injections, and funds used or provided by operations.

The Debtors shall, within two (2) business days of the occurrence of the same, promptly give the Lender notice of the occurrence of any event or any matter which has resulted or will result in the material adverse change in the business, assets, operations or financial condition of any of the Debtors.

These reports shall be submitted in addition to the monthly operating reports required to be submitted under the Bankruptcy Code, Bankruptcy Rules, Local Rules, and U.S. Trustee guidelines.

20.     **MAINTENANCE OF BOOKS AND RECORDS.** The Debtors are directed to keep their books and records of original entry, including without limitation, records of sale, credits authorized (whether or not credit memoranda have been issued), purchases, accounts receivable, bills of lading, cash receipts, and cash disbursements, current and updated, so that all business activity is posted to them in the ordinary course of the Debtors' business.

21.     **INSPECTION OF BOOKS AND RECORDS.** The Lender shall have the right to inspect, audit, examine, check, make copies of or extracts from the books, accounts checks, orders, invoices, bills of lading, correspondence and other records of the Debtors, and the Debtors shall make all of same available to the Lender and its representatives, for such purposes.

22.     **LOCKBOX SYSTEM.** The Debtors shall maintain a blocked account or lockbox system with Lender for its receivables (in form and substance reasonably satisfactory to the Lender) and shall close all lockbox accounts other than the accounts maintained with the Lender.

23.    **DEPOSIT OF FUNDS IN CASH COLLATERAL ACCOUNTS.** Upon entry of this Final Financing Order, the Debtors shall immediately deliver all cash and checks of the Debtors currently in their possession, in bank accounts, in lockbox accounts or otherwise, and the proceeds thereof, if any, to the Lender for deposit into a cash collateral account managed by Lender, and thereafter the Debtors and any successor to the Debtors, including without limitation any successor trustee or trustees, shall immediately deliver any and all payments or proceeds realized upon the sale, liquidation, collection or disposition of the post-petition collateral or pre-petition collateral, including without limitation the proceeds of sales authorized pursuant to Section 363 of the Bankruptcy Code or any plan of reorganization that come into its possession to the Lender, in the form received for deposit into such cash collateral account.

24.    **ACCRUAL OF INTEREST.** Lender is authorized to accrue interest on the outstanding balance of the obligations due pursuant to the Credit Agreement and to apply remittances from the Debtors against interest as set forth herein and therein.

25.    **SECTION 364(e).** Pursuant to, and to the extent of, the provisions of Section 364(e) of the Bankruptcy Code, the liens and security interests granted by and subject of the Prior Interim DIP Orders and this Final Financing Order shall be binding on the Debtors, their estates and their successors and assigns even if the First Interim Financing Order, the Second Interim Financing Order, the Third Interim Financing Order or this Final Financing Order are reversed or modified on appeal. For purposes of this Final Financing Order, the term "appeal" as used in Section 364(e) of the Bankruptcy Code shall be construed to mean a proceeding for appeal, reconsideration, amendment, rehearing or re-evaluation of this Final Financing Order by this Court or any other tribunal.

26.    **SURVIVAL OF LIENS.** If an order dismissing the Bankruptcy Case under Section 1112 of the Bankruptcy Code or otherwise is at any time entered, such order shall provide (in accordance with Sections 105 and 349(b) of the Bankruptcy Code) that (i) the claims and liens granted pursuant to the Prior Interim DIP Orders and this Final Financing Order to or for the benefit of the Lender and in conjunction with any facility addressed herein shall continue in full force and effect and shall maintain their priorities as provided in the Prior Interim DIP Orders and this Final Financing Order until all obligations in respect thereof shall have been indefeasibly paid in full in cash and satisfied in the manner provided in the Credit Agreement, the other pre-petition Credit Documents, the Prior Interim DIP Orders, this Final Financing Order and the Existing Credit Facilities (and that such claims and liens shall, notwithstanding such dismissal, remain binding on all parties in interest), and (ii) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing such claims and liens.

27.    **AUTHORIZATION TO TAKE CERTAIN ACTIONS.** The Debtors are hereby authorized to do and perform all acts and to make, execute and deliver all instruments and documents that may be required or necessary for the performance of the DIP Financing including, without limitation, the delivery to the Lender of the original checks or other forms of remittance received by the Debtors which are the proceeds of the post-petition collateral, and the payment by the Debtors of any monies or assets in their possession of all sums required to be paid to the Lender under the Credit Agreement and the Existing Credit Facilities.

28.    **IMMEDIATE EFFECT OF ORDER.** Notwithstanding Bankruptcy Rule 7062, the terms and conditions of this Final Financing Order shall be: (a) immediately enforceable pursuant to Bankruptcy Rule 8005; and (b) not be stayed absent (1) an application by a party in

interest for such stay in conformance with such Bankruptcy Rule 8005, (2) a hearing upon notice to the Debtors and the Lender and (3) entry of an order granting such stay.

If this Final Financing Order never becomes a final and nonappealable order, if the Debtors terminate this Final Financing Order, or if any or all of the provisions of this Final Financing Order are hereafter modified, vacated or stayed by subsequent order of this Court or any other court, such termination or subsequent order shall not affect the priority, validity, enforceability or effectiveness of any lien, security interest, priority, or other benefit authorized hereby with respect to any DIP Collateral, including by not limited to, the Cash Collateral used prior to the effective date of such subsequent order (and all such liens, security interests, priorities and other benefits shall be governed in all respects by the original provisions of this Final Financing Order.)

29.    **SURVIVAL OF LIENS AND PRIORITY.** No rights, claims or liens of the Lender, pre-petition or post-petition, granted hereunder shall be modified in any plan of reorganization or subsequent filing. The provisions of this Final Financing Order and all obligations of the Debtors under the Credit Agreement or this Final Financing Order and any actions taken pursuant hereto shall survive entry of any orders which may be entered confirming any plan of reorganization or which may be entered converting these Bankruptcy Cases from Chapter 11 to Chapter 7 of the Bankruptcy Code; provided, further, that the terms and provisions of this Final Financing Order, as well as the liens and security interests granted to Lender, shall continue in theses cases or any superseding case under the Bankruptcy Code and such liens and security interests shall maintain their priority as provided by the Prior Interim DIP Orders and this Final Financing Order until the DIP Obligations and all credits under the Existing Credit Facilities are satisfied in full.

30.    **MODIFICATION OF FINAL FINANCING ORDER.** Nothing in this Final Financing Order shall limit the Lender's rights to seek modification of this Final Financing Order (with the consent of the Debtors if no Default or Termination Event exists) or for cause if a Default or Termination Event exists.

31.    **RIGHTS AGAINST THIRD PARTIES.** Nothing in this Final Financing Order shall in any way prejudice or compromise any rights the Lender may have against parties other than the Debtors.

32.    **NO WAIVER.** This Final Financing Order shall not constitute a waiver by the Lender of any of its rights under the Credit Agreement, the Existing Credit Facilities, the Bankruptcy Code or other applicable law, including, without limitation (i) its right to assert that, notwithstanding the terms and provisions of this Final Financing Order, and its interests in the DIP Collateral, including but not limited to the Cash Collateral, it is entitled to adequate protection within the meaning of Sections 362(d) or 363(e) of the Bankruptcy Code; or (ii) its right to assert a claim under Section 507 of the Bankruptcy Code. The Lender's failure, at any time or times hereafter, to require strict performance under this Final Financing Order, the Credit Agreement, or the Existing Credit Facilities shall not result in a waiver of any of the Lender's rights. No delay on the part of the Lender in the exercise of any right or remedy under this Final Financing Order shall preclude any other or further exercise of any such right or remedy. None of the rights or remedies of the Lender under this Final Financing Order shall be deemed to have been suspended or waived by the Lender unless such suspension or waiver is in writing, signed by a duly authorized officer of the Lender, and directed to the Debtors specifying such suspension or waiver.

33. **<u>NO UNINTENDED BENEFICIARIES.</u>** The provisions of this Final Financing Order shall be binding upon and inure to the benefit of the Lender, the Debtors, the Debtors' estates and their respective successors and assigns (including any trustee appointed as a representative of Debtors' estates or in any subsequent proceeding under the Bankruptcy Code). Except as explicitly provided for herein, this Final Financing Order does not create any rights for the benefit of any other party, creditor, equity holder, or any other direct, indirect or incidental beneficiary.

34. **<u>ORDER CONTROLLING.</u>** To the extent that any of the provisions of this Final Financing Order shall conflict with any of the provisions of the Credit Agreement, this Final Financing Order is deemed to control and shall supersede the conflicting provision(s) in the Credit Agreement.

DATED this 28 day of August, 2009.

BY THE COURT:

Hon. Harry C. Dees, Jr.
Chief Judge, United States Bankruptcy Court

**EXHIBIT A**
**G&S Metal and Transport**
**Sources & Uses of Cash**
as of: 8/23/09

| Week Ending Sunday: | 8/30/09 Projection | 9/6/09 Projection | 9/13/09 Projection | 9/20/09 Projection | 9/27/09 Projection | 10/4/09 Projection |
|---|---|---|---|---|---|---|
| **Receipts** | | | | | | |
| Sales Activity | 20,846 | 114,506 | 38,200 | 159,638 | | |
| Insurance Proceeds | | | | | | |
| Tax Refund Deposits | | | | | | |
| Refunds, Miscellaneous Receipts | | | | | | |
| **Total** | 20,846 | 114,506 | 38,200 | 159,638 | | |
| **Disbursements** | | | | | | |
| Payroll and related | 26,760 | 27,941 | 25,441 | 28,123 | 25,441 | |
| Rents | 5,436 | 30,000 | | 10,908 | | |
| Material Purchased | 19,485 | 19,485 | 19,485 | 19,485 | 19,485 | |
| Material Contra Against AR | | | | | | |
| Taxes | | | | | | |
| Insurance | | | | 9,838 | | |
| Utilities, Phones | 62,080 | 5,109 | | | 82,376 | 3,398 |
| Debtor's Professional Fees and Expenses | | | 351,691 | | 70,332 | 204,837 |
| Fifth Third Expenses | | | 52,250 | | 1,841 | 22,760 |
| Creditor Committee Fees | | | 22,705 | | | 27,295 |
| US Trustee Fees | | | | | 10,075 | |
| Other | 18,222 | 57,234 | 15,854 | 27,062 | 25,257 | |
| 503(b)(9) Claims | | | | | | |
| Interest: $465K IRB funded by 5/3 | | (462,675) | | | | |
| Interest | 7,472 | 30,320 | 7,472 | 7,696 | 7,472 | |
| **Total** | 139,455 | (292,586) | 484,798 | 103,110 | 151,994 | 258,264 |
| **Change in Cash** | (118,809) | (407,093) | (466,598) | 55,728 | (151,994) | (258,264) |
| Ending Cash Balance | 231,699 | 638,792 | 172,194 | 227,922 | 85,928 | (172,339) |
| **LOC** | | | | | | |
| Beginning Balance | 5,119,111 | 5,119,111 | 5,119,111 | 5,119,111 | 5,119,111 | 5,119,111 |
| Drawn/(Paydowns) | | | | | | |
| Letters of Credit Draws/(Paydowns) | | | | | | |
| Ending Balance | 5,119,111 | 5,119,111 | 5,119,111 | 5,119,111 | 5,119,111 | 5,119,111 |
| **Borrowing Base** | | | | | | |
| Beginning Borrowing Base | 632,883 | 686,678 | 665,405 | 705,176 | 648,437 | 720,410 |
| M/D in AR at 60% | 53,815 | (21,273) | 38,772 | (56,739) | 70,332 | (177,688) |
| M/D in RM @ 50% | 0 | | | 435,350 | 1,841 | 531,464 |
| M/D in FG @ 60% | 0 | | | | | 100,735 |
| Ending Borrowing Base | 686,678 | 665,405 | 705,176 | 648,437 | 720,410 | |
| **Over Advance** | (4,432,433) | (4,453,706) | (4,413,935) | (4,470,674) | (4,398,701) | (4,390,701) |
| less ending cash balance | (4,200,734) | (3,814,915) | (4,241,741) | (4,242,752) | (4,312,773) | (4,312,773) |
| **Borrowing Base Support** | | | | | | |
| Accounts Receivable | | | | | | |
| AR Ending Balance | 639,049 | 632,457 | 682,171 | 611,248 | 699,182 | |
| less Contra + Over 90 days | (177,699) | (177,699) | (177,699) | (177,699) | (177,699) | (177,699) |
| AR Available | 461,351 | 454,759 | 504,473 | 433,550 | 521,484 | |
| Raw Material | 97,453 | 97,453 | 97,453 | 97,453 | 100,735 | |
| Finished Goods | 421,452 | 421,452 | 421,452 | 421,452 | 421,452 | |
| Total Available Collateral | 1,000,255 | 973,663 | 1,023,378 | 952,454 | 1,043,861 | |

check